Kilgore *vs.* Beck.

A. KILGORE, plaintiff in error, *vs* R. T. BECK *et al.*, defendants in error.

1. When the head of a family applied to the Ordinary, by petition, to have a homestead set apart for his family, under section 2013 of the Code, accompanied by a schedule of his property; and the land was sold at sheriff's sale pending this application; the purchaser at such sale, with notice that such application was pending, took the property under section 2018 of the Code, subject to the incumbrance of the homestead when properly laid off.

2. If the purchaser is proceeding to have the sheriff turn out the family, and put him in possession, and the head of the family has acted in good faith, and with reasonable diligence, for the purpose of having the homestead laid off, this will, under section 3153 of the Code, authorize the Court of Chancery to interfere by injunction to restrain the eviction till the parties can be fairly heard, and their rights be adjudicated. And if the Chancellor, under a misapprehension of the legal rights of the family has dissolved the injunction, and directed the sheriff to proceed to turn the family out of their home, this Court will interfere and control the discretion of the Court below, and require the injunction to be retained till the hearing.

Homestead. Injunction. Before Judge PARROTT. Murray Superior Court. October Term, 1869.

Kilgore's bill averred as follows: On the 2d of January, 1869, he filed in the Ordinary's office his application for setting apart and valuation of a homestead, under section 2013 of Irwin's Code, said application and papers being "all right." For some cause unknown to Kilgore, the Ordinary took no action on these papers until the 23d of March, 1869. Kilgore had counsel attending to it, and supposed that it was "all right;" the homestead claimed was sixty acres of land out of the one hundred and sixty acre lot owned by him, sixty acres being the sum allowed for his family under said section of the Code. On the 5th of January, 1869, Beck, the sheriff of said county, by virtue of a *fi. fa.* in favor of F. B. Morris against Kilgore, sold the whole of said lot at sheriff's sale to J. A. R. Hanks. Kilgore supposed the sheriff sold but that part of the lot not claimed by him as a homestead. On the 23d of March, 1869, Kilgore learned that Hanks bought the whole lot, and the sheriff is about to

dispossess Kilgore's family. He prayed for injunction till the proceedings to set apart his homestead could be completed, etc. The injunction was granted.

The sheriff answered that on the 9th of December he levied on the whole of said lot under said *fi. fa.*, advertised it regularly, and sold all of it, as aforesaid, to Hanks at $85 00, and made a deed to Hanks & Morris for the whole lot; that they afterwards ordered him to put one McHan in possession, and he was proceeding to do so; that Kilgore was present at the sale, made no claim of any exemption, nor did the sheriff know of such claim, and he said that he read his advertisement of the whole lot, and sold the whole as usual.

Hanks answered, " that so far as he recollects, he had not, at the time he purchased the land, ever seen said petition and schedule, or that he has yet seen the same, except the copy " attached to the bill; he denied that the proceeding for obtaining his homestead was "all right," saying that neither Kilgore nor his counsel applied for a survey and plat of the land claimed as a homestead, nor was the application made according to the Act of 3d of October, 1868, and the Ordinary did not publish the notice required by the 3d section of that Act; he bought the same for himself and Morris. He said that Kilgore was present, or at least in town, at the time of the sale, and made no claim of any exemption at said time; that he and Morris were anxious to rent the land to Kilgore, sent a message to him to that effect, but Kilgore refused to rent it, and several weeks afterwards, they, *bona fide*, sold the land to McHan on the 21st of March, 1869.

These papers were submitted to the Court upon a motion to dissolve the injunction, without argument, and he dissolved the injunction. This is assigned as error.

W. LUFFMAN, JOHNSON & McCAMY, for plaintiff in error, as to homestead, cited: Irwin's Code, sec. 2018; 14th Ga. R., 272: 20th, 38; 22d, 165; Cobb's Dig., 385, 388, 391, inclusive; Acts 1857, 64; Acts 1859, 51; 1860, 36–7; 38th, Ga. R., 531.

Kilgore *vs.* Beck.

J. A. R. HANKS, D. A. WALKER, for defendants, cited Irwin's Code, sec. 3600. If McHan's title be not good, Kilgore can eject him, and therefore has complete remedy at law: 5th Ga. R., 576; 8th Ga., 118; 11th, 296. Kilgore's *laches* defeats his equity: 14th Ga. Rep., 271; 20th, 38; 22d, 165.

BROWN, C. J.

This was a proceeding to have a homestead laid off to the head of a family, under section 2013 of the Code. The applicant had filed a petition in the office of the Ordinary, praying that the homestead be laid off, and had accompanied it with a schedule of his property. This was done but a few days prior to the day of sale, and the survey had not been made and returned when the land was sold by the sheriff for the debts of the head of the family. And it is argued that the homestead, under this section of the Code, must now be laid off, under the Act of 3d October, 1868, just as the homestead provided for by that Act is laid off, and that it is lost to the family if all the requirements of that Act have not been fully complied with prior to the sale of the land by the sheriff, that this Act repeals section 2018 of the Code, which is in these words: "If, from any cause, the land exempt has not been laid off when the remainder is offered for sale, notice being given of the fact, the purchaser will buy subject to the incumbrance."

We do not think this section of the Code is repealed. It relates to the same subject-matter as is embraced in the Act of 1868, and being in *pari materia*, they must be construed together, and if they can be reconciled, both must stand. There seems to be no actual conflict between them. The Act of 1868 provides how the homestead shall be laid off. In this case the applicant was moving to have it done, but the sheriff proceeded to sell the property while the application was pending, and section 2018 of the Code says, in case it has not been laid off, the purchaser at the sheriff's sale, with notice, takes the land subject to the incumbrance of the homestead. Why may they not stand together?

The purchaser at sheriff's sale was moving to have the sheriff turn the family out of their home, and put him or his assignee in possession, when the Chancellor, on application to him by bill, granted an injunction to restrain him. But on the hearing, after notice given of a motion for that purpose, he dissolved the injunction, and this decision is complained of. Under section 3153 of the Code, the Chancellor may restrain a trespasser if the injury is irreparable in damages, or the trespasser is insolvent, or there exists *other circumstances*, which, in the discretion of the Court, render the interposition of this writ necessary and proper. It is insisted, however, that the action of the sheriff in putting the purchaser in possession would be only a trespass, admitting that the family still have the right to their home, and it is said the purchaser is perfectly able to respond in damages. This may be very true. But we think it a trespass where those "other circumstances" exist, which make it proper for a Court of Equity to interfere by injunction. We can not say the remedy by action for damages would be as adequate *in such case* as by injunction. It is a little difficult to estimate correctly the damages which should be adjudged to a party whose wife and children have been illegally thrown out and expelled from their home. It is a proper case for the restraining power of a Court of Chancery, if they have a legal right to remain there.

There is some conflict in this case as to the fact whether the purchaser had notice at or before the sheriff's sale, that the application for the laying off the homestead was then pending in the Court of Ordinary. In his answer the purchaser states that he *had not seen* the application, to the best of his recollection, but he does not state that he had no notice that it was pending. This will be a proper subject of inquiry on the trial.

So much for the rights of these parties. Did the Court err in dissolving the injunction, and directing the sheriff to dispossess the family?

On looking through this record, we are of opinion the Judge acted under the belief that the purchaser got a perfect

title at the sheriff's sale. If this were true, it was proper to dissolve the injunction. But under our construction it may turn out on the trial that he did not. If not, it would be a great hardship to permit this family to be wrongfully turned out of house and home under color of legal process. In view of all the circumstances of this case, we think the Judge should have held up the injunction till the hearing.

Judgment reversed.